# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| **ESTATE OF RUSSELL MORGAN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-18-170** |
| | ) | |
| **BWW LAW GROUP, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Before the Court is Defendants BWW Law Group, LLC, Rushmore Loan Management, and U.S. Bank National Association's Motion to Dismiss Second Amended Complaint or, in the alternative, for Summary Judgment ("Defendants' Motion")(ECF No. 49). The Court has reviewed Defendants' Motion and the memoranda related thereto. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion.

### I.      Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." Velencia v. Drezhlo, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. (quoting Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006)). In doing so, the Court must keep in mind the requirements of Fed. R. Civ. P. 8, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678–79. See Velencia, 2012 WL 6562764, at *4 (discussing standard from Iqbal and Twombly).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. At this stage of the proceedings, the Court must accept the well pled facts alleged in complaint as true. See Aziz v. Alcolac, 658 F.3d 388, 390 (4th Cir. 2011).

## II.   Motion for Summary Judgment Standard of Review

A Court may grant summary judgment, "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Felty v. Graves-Humphreys, 818 F.2d 1126, 1128 (4th Cir. 1987).

The Court must view facts and all reasonable inferences in favor of the nonmoving party in order to ascertain whether a genuine issue of material fact exists. Pulliam Inv. Co. v. Cameo Properties, Inc., 810 F.2d 1282, 1286 (4th Cir. 1987); Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

However, the mere existence of some disputed facts does not automatically foreclose summary judgment. Thompson Everett, Inc. v. National Cable Advertising L.P., 57 F.3d 1317, 1322 (4th Cir. 1995). "Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Rather, the disputed facts must be

"material to an issue necessary for the proper resolution of the case," and "the quality and quantity of evidence offered to create a question of fact must be adequate to support a jury verdict." Thompson, 57 F.3d at 1323.

The burden of demonstrating that no genuine issue of fact exists and that one is entitled to judgment as a matter of law is on the moving party. Barwick v. Celotex Corp., 736 F.2d 946, 958 (4th Cir. 1984). The ultimate question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant, at trial, would be entitled to judgment as a matter of law. See, Celotex, 477 U.S. at 327; Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

### III. The Court Will Not Convert the Motion to Dismiss into a Motion for Summary Judgment.

The Court is of the view that it is premature to consider Defendants' alternative pleading seeking summary judgment. Converting a motion to dismiss into a motion for summary judgment is not appropriate where a party has not had the opportunity to conduct reasonable discovery. Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985). Typically, summary judgment should be denied "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986).

Despite this black letter law, the non-moving party has an affirmative obligation to overcome the motion couched in the alternative: there must be a representation of the need to obtain discovery. A Rule 56 affidavit should be filed when facts are unavailable to the non-moving party. This affidavit should articulate the areas where reasonable discovery is likely to bear fruitful information that may defeat the motion for summary judgment. Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot

present facts essential to justify its opposition" then the court may defer or deny the motion, allow discovery, or make any other appropriate order.")  Harrods Ltd. v. Sixty Internet Doman Names, 302 F.3d 214 (4th Cir. 2002).

Plaintiffs have followed the letter of the law here.  Plaintiffs have provided the necessary affidavit in support of their need to obtain discovery which they reasonably contend is in the exclusive control of Defendants.  Decl. of Counsel in Supp. of Pls.' Mot. to Allow Time for Disc. Under Rule 56(d).  ECF No. 52-1.  Upon reviewing this submission, the Court is persuaded that this supporting affidavit is not mere boilerplate, but substantively addresses a laundry list of areas for needed discovery.  Accordingly, the Court will not consider Defendants' Motion for summary judgment, nor consider materials outside of the Second Amended Complaint ("SAC").

IV.    **Plaintiffs' Fair Debt Collection Protection Act Claims.**

Defendants challenge Plaintiffs' Fair Debt Collection Act ("FDCPA") claims on several levels.  The FDCPA can be found at 15 U.S.C. § 1692 et. seq. (1997).

A.    **The Cure Amount and the Ability to Foreclose.**

Plaintiffs contend that

> [o]n October 18, 2018, Rushmore sent Plaintiff a Notice of Intent to Foreclose, which overstated the cure amount as $135,402.75 . . . . The claimed cure amount was nearly $12,000 more than the amount claimed due in the August mortgage statement. Because the monthly payment was only $2,521.11 and only two months had elapsed before Rushmore claimed the amount increased by $12,000, Rushmore knew the amount stated in the Notice of Intent was patently false.

SAC ¶ 56.  Furthermore, Plaintiffs assert that "Rushmore violated §1692e(2),(5)&(10) by misrepresenting and/or falsely representing in the Notice of Intent from October 2018 that US

Bank, Rushmore or BWW the cure amount and misrepresenting that they could foreclose on Plaintiff's Property." SAC ¶ 61.

Defendants argue that these statements are not sufficient to make a plausible claim that the cure amount reflected in the Notice of Intent to Foreclose ("NOI") was false. Defendants state that Plaintiffs have failed to plead specific facts to show that the stated amount is false.

Regarding the cure amount, the Court at this stage of the proceedings is not inclined to consider Defendants offer of additional facts beyond the four corners of the SAC. As stated by Plaintiffs, a two-month failure to make monthly payments of less than $2600 per month, should not equate to a nearly $12,000 bonus. Plaintiffs' claim is plausible and satisfies the dictates of Fed. R. Civ. P. 8.

**B.      Plaintiffs Do Not Have to Satisfy the Heightened Pleading Requirement of Fed. R. Civ. P. 9(b).**

Defendants suggest that Plaintiffs must satisfy the higher burden set by Fed. R. Civ. P. 9(b). The Court respectfully disagrees. While there are decisions in different federal courts which support the views of both parties, the Court finds most persuasive the reasoning of Neild v. Wolpoff & Abramson, LLP, 453 F. Supp. 2d 918 (E.D. Va. 2006). In Neild, the court noted that the issue appeared to be one of first impression in the Fourth Circuit. Even within the Fourth Circuit there have been federal courts that look to whether the gravamen of the offense is fraud and requiring more specific pleading even if the claim is not technically labeled as such. Id. at 923. Yet, when looking to Virginia's common law fraud claims, which are very akin to those in Maryland, the court noted several meaningful distinctions from an FDCPA claim. These distinctions under the FDCPA include: 1) no need to prove reliance on a false representation; 2) no need to show actual damages; and, 3) no need to show scienter. Id. Similarly, this Court ruled long ago that "the FDCPA is a strict liability statute." Spencer v Hendersen-Webb, Inc., 81

F. Supp. 2d 582, 590 (D. Md. 1999).  Accordingly, the "gravamen" of a FDCPA claim is not

fraud, and Plaintiffs are not required to satisfy Fed. R. Civ. P. 9(b).  Here it appears that there

was more than a doubling of potential amounts due.  The Court is persuaded that Plaintiffs have

satisfied the pleading requirements of Fed. R. Civ. P. 8.

<strong>C.       Default and the Holder of the Note.</strong>

Defendants additionally seek dismissal claiming the SAC is defective when asserting that

Rushmore lacked authority to enforce the loan through foreclosure while at the same time

acknowledging in paragraph 18 that the mortgage loan had been declared in default.  Plaintiffs

contend in paragraph 18 that Nationstar declared the default, and here argue that this was no

acknowledgement of default, merely Nationstar's declaration.  Furthermore, Plaintiffs make

clear that the reason Defendants lacked authority to foreclose is because Rushmore was not the

holder of the Note.  SAC ¶ 59.  To this argument, Defendants remain silent in their reply

briefing.

A person obligated on a promissory note is known as the "maker" of the note.  Under

Maryland law, the maker must pay the obligation to "a person entitled to enforce the instrument

or to an indorser who paid the instrument . . . ."  Md. Code Ann., Com. Law, §3-412 (LexisNexis

2013 Repl. Vol.).  Generally, a promissory note may be enforced by the "holder" of the note or a

nonholder who has the rights of a holder or a person entitled to enforce the note under special

circumstances recognized by statute.  Md. Code Ann., Com. Law, §3-301 (LexisNexis 2013

Repl. Vol.).  Accordingly, a "holder" is the person in possession of a note that is payable to

bearer or to an identified person that is a person in possession.  Md. Code Ann., Com. Law, §1-

201(b)(21)(i) (LexisNexis 2013 Repl. Vol.).  "Thus, the person in possession of a note, either

6

specially indorsed to that person or indorsed in blank, is a holder entitled generally to enforce that note." Deutsche Bank Nat. Trust Co. v. Brock, 430 Md. 714, 729-30 (2013).

Plaintiffs correctly observe that the existence of default is not dispositive. The additional concern is the proper entity to receive payment. Plaintiffs contend that Rushmore is not a proper holder of the note. In fact, Plaintiffs contend that none of the defendants are proper holders and demand proof of such. Furthermore, mere possession of the note is not sufficient to be a holder entitled to payment. A holder entitled to payment must also have a note that is properly endorsed. Anderson v. Burson, 424 Md. 232, 247 (2011). Plaintiffs have sufficiently alleged a violation of this prong of the FDCPA.

### D.  The Amount of Interest Due.

Defendants challenge Plaintiffs' pleading regarding the prong of the FDCPA which prohibits an attempt to collect by misrepresentation any interest that is claimed due. Plaintiffs' pleading states that "Rushmore violated §1692e(2),(10) and f(1) by misrepresenting and/or falsely representing the amount of interest that could be assessed on the loan." SAC ¶ 62. Defendants attack this averment by noting that Plaintiffs do "not plead facts establishing what the correct interest rate is, what the interest rate charged by Rushmore was, and why Rushmore's interest rate was incorrect. Without these facts, Plaintiffs' claim is conclusory and not viable." Defendants' Motion 4. As stated earlier, the criticisms raised by Defendants might be more persuasive if Plaintiffs were obligated to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). Since this claim is governed by Fed. R. Civ. P. 8, the Court is satisfied that Plaintiffs have pled sufficient facts to place Defendants on fair notice of the claim.

### E.    <u>Awareness of Plaintiffs Being Represented by Counsel</u>.

Plaintiffs allege that Rushmore violated the FDCPA by

> sending debt communications – June and July 2018 letters, August
> 2018 mortgage statement, and October 2018 Notice of Intent –
> directly to Plaintiff after June 5, 2018, at which time Plaintiffs'
> counsel entered an appearance in Plaintiffs' lawsuit against
> Rushmore and the defendants, and the Defendant [Rushmore]
> became aware that Plaintiffs were represented by an attorney with
> respect to the subject mortgage debt.

SAC ¶ 64.

The FDCPA generally prohibits a debt collector from communicating directly with a consumer if said collector has actual knowledge that the consumer is represented by counsel, and if the debt collector knows of or can readily ascertain the attorney's contact information. 15 U.S.C. 1692c(a)(2). Plaintiffs do not suggest that they provided a direct communication to Rushmore to advise of counsel's involvement. Plaintiffs' view that Rushmore was on notice of their legal representation is tethered to the electronic filing with the Court of the appearance of counsel. This method of notification is sufficient, but only for a portion of Plaintiffs' proposed timeline

Plaintiffs filed an amended complaint with the Court on June 5, 2018. ECF No. 10. Interestingly however, Plaintiffs did not seek the issuance of a summons regarding Rushmore until July 18, 2018. ECF No. 17. There is nothing set forth in the SAC to infer that Rushmore was aware of the involvement of counsel or even of the filing of a complaint before it was actually served. The earliest date of Rushmore's knowledge that could be inferred from the court filings is July 25, 2018, a date which Rushmore concedes it participated in a telephone conference with the Court regarding the case. ECF No. 19. Accordingly, the only communications from Rushmore to Plaintiffs that are potentially actionable are those which post-

date July 25, 2018.  The SAC identifies debt communications allegedly occurring in August and October 2018.

## 1.    The August 2018 Mortgage Statement.

Regarding the August 2018 mortgage statement, Rushmore brings to light the conflicting obligations imposed on mortgage loan servicers under federal law.  While the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 et seq. ("RESPA") and the Truth in Lending Act, 15 U.S.C. §1601 et seq., ("TILA") require Rushmore to send certain communications to a consumer, the FDCPA has a provision giving the consumer the power to prohibit the same.  The "cease communications" provision of the FDCPA is found at 15 U.S.C. § 1692c(c).

Rushmore points out the role that the Consumer Financial Protection Bureau ("CFPB") has come to play in this area of consumer rights versus notifications required by law.  Rushmore relies upon a bulletin issued by the CFPB which relates to occasions when a consumer has provided a "cease communication" instruction to a servicer.  In that instance, the CFPB has determined that continued deliveries by the servicer of periodic statements of the outstanding debt for each billing cycle does not violate the FDCPA.  Furthermore, this advisory opinion provides a reminder that "no liability arises under the FDCPA for an act done or omitted in good faith in conformity with an advisory opinion of the CFPB" while the opinion is in effect.  CFPB Bulletin 2013-12, October 15, 2013, 2013 WL 9001249.

Rushmore makes a point by comparison.  Namely, if it is not a violation of the FDCPA for a servicer to continue to comply with certain obligations under the rules and regulations applicable to RESPA and TILA when a consumer by express authority has directed such communications to cease; then sending such notifications in the absence of a cease communications notice likewise should not be actionable.

Again however, Plaintiffs' contention is not that Rushmore is liable for sending the periodic statement. Plaintiffs contend that the violation here is that Rushmore should have sent the statement to Plaintiffs' counsel. To this argument, Rushmore cites <u>Vitullo v. Mancini</u>, 684 F. Supp. 2d 747 (E.D. Va. 2010). There the consumer contended that the direct communication was prohibited as the servicer was aware of the representation by counsel. The court granted the motion to dismiss as the servicer was merely complying with the notice obligations of state law.

Plaintiffs respond by relying upon <u>Foster v. Green Tree Servicing, LLC</u>, Case No. 8:15-cv-1878-T-27MAP, 2017 WL 5151354 (M.D. Fl. Nov. 3, 2017). Like the court in <u>Vitullo</u>, the <u>Foster</u> court dealt directly with the § 1692c(a) no direct contact with the consumer provision. The consumers in <u>Foster</u> tried to distinguish a § 1692c(a) claim from a § 1692c(c) claim, and the applicability of the CFPB Bulletin. The court's reasoning however, was not driven by this distinction. In ruling on the motion for summary judgment filed by the servicer, the court observed that the consumers "also persuasively argue that [the servicer's] billing statements include debt collection language that is not required by either TILA or Regulation X or Z." <u>Id.</u> at *6. It was the inclusion of this additional language that overcame the servicers motion.

As noted by Rushmore here, Plaintiffs have not alleged that the August 2018 mortgage "statement included extraneous debt collection attempts" or other information not required by the TILA. Accordingly, the Court is persuaded that Plaintiffs have not sufficiently pled a plausible cause of action regarding the August 2018 mortgage statement, as this statement was required to be provided by federal law, the CFPB opinion provides reasonable guidance, and Plaintiffs have failed to adequately allege debt collection activity beyond the federal notice requirement.

## 2. The October 2018 Notice of Intent to Foreclose.

The activity regarding the October 2018 NOI implicates state law collection procedures. There is clear case law in the Fourth Circuit for the proposition that "actions surrounding" foreclosure procedures are efforts to collect on a debt and are covered by the FDCPA. Wilson v. Draper & Goldberg, PLLC, 443 F.3d 373, 376 (4th Cir. 2006). To the extent a debt collector is obligated to comply with state law, it must do so in a way that is consistent with the requirements of federal law. Where a conflict remains, the federal law prevails. Goodrow v. Friedman & MacFadyen, PA, 788 F. Supp. 2d 464, 471 (E.D. Va. 2011).

Plaintiffs allege the NOI was sent by Rushmore. Rushmore seeks to challenge the allegation on a substantive factual level, which is not permitted within the confines of a motion to dismiss. It is inappropriate for the Court to consider Rushmore's argument that the NOI was actually sent by another entity. A.S. Abell Co. v. Chell, 412 F.2d 712, 715 (4th Cir. 1969). Plaintiffs have alleged a plausible claim as it relates to the NOI.

## V. Plaintiffs' Maryland Consumer Debt Collection Act Claims.

Defendants seek to dismiss Plaintiffs' Maryland Consumer Debt Collection Act ("MCDCA") claims on several levels. The MCDCA can be found at Md. Code Ann., Com. Law, §14-201 et seq. (LexisNexis 2013 Repl. Vol.).

Plaintiffs allege that Defendants violated the MCDCA by several different methods, including by trying to make wrongful collections, or asserting rights not owned, by seeking to collect for inflated amounts, for attempting to foreclose on a promissory note unlawfully, as well as scheduling a foreclosure sale of Plaintiffs' property without a legal basis. SAC ¶¶68-71. Plaintiffs also allege that as a result, Plaintiffs endured damages "including out-of-pocket costs, fear of losing the Property, worry about where he and his brother would live, anxiety about

losing the family home, very heavy stress, severe headaches and stomach aches, sleepless nights, eating disorders, excessive worry, [and] mental and emotional distress." SAC ¶78.

Defendants move to dismiss the claim on the basis that "Plaintiff has failed to plead a sufficient factual basis, . . . failed to plead that the loan is invalid, and failed to plead proximately caused damages." Defendants' Motion 7.

Plaintiffs must "set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so." Cole v. Federal Nat'l Mortg. Ass'n, Case No. GJH-15-3960, 2017 WL 623465, at *7, (D. Md. Feb. 14, 2017) (citation omitted). Stated another way, the issues are whether Defendants had the power to collect a certain amount, and Defendants knowledge that they did not.

Unlike claims under the FDCPA, MCDCA claims are premised upon fraudulent conduct and as such must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). The rule states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The guiding principles for illuminating the sufficiency of allegations that satisfy this heightened standard are stated in Harrison v. Westinghouse Savannah River Co., 176 F.3d 776 (4th Cir. 1999). There the court pointed out that the circumstances required to be pled are, "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Id. at 784. Moreover, "conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive" are permissible.

To the extent that Defendants object to a failure "to plead that the loan is invalid," said objection has no substance. Plaintiffs correctly rely upon a recent decision from this Court.

> Defendants confuse the validity of a debt, and the methods one takes to collect that debt. "Section 14–202(8) only makes grammatical sense if the underlying debt, expressly defined to include an alleged debt, is assumed to exist, and the specific prohibitions are interpreted as proscribing certain *methods* of debt collection rather than the debt itself."

Cezair v. JPMorgan Chase Bank, N.A., Civ. A. No. DKC 13-2928, at *10 (2014 WL 4295048 (D. Md. Aug. 29, 2014) (citations omitted). Plaintiffs' election not to plead that the debt was "invalid" is of no moment here. Plaintiffs' dispute centers on the amount of debt that they allege Defendants had no right to seek.

A few of the factual underpinnings for Plaintiffs' claims are set forth in some detail in the SAC ¶¶ 32-38. In these sections alone, Plaintiffs articulate the claimed wrongful action of Defendants in terms of inflated and improper amounts being sought by category and amounts; the filing, service and scheduling of a foreclosure action seeking illegal amounts, and the reasons why Plaintiffs believe the activities were illegal. Plaintiffs have alleged sufficient detail to satisfy Rule 9(b). The time, place, and contents of the false representations are provided, as well as the identities of the responsible entities. The SAC further alleges in ¶¶ 68, 70-71, and 75-76 the requisite knowledge and intent to deceive by Defendants.

When considering the averment in the SAC ¶ 56, the Court is similarly persuaded that Plaintiffs have met the requirements to survive Defendants' Motion. As stated earlier, a two-month failure to make monthly payments of less than $2600 per month, should not equate to a nearly $12,000 bonus. This satisfies the need to allege damages proximately caused. The particulars of the other damage claims can be addressed as the case proceeds through discovery and motions practice. Equally, Plaintiffs claim that "Defendants sought to foreclose on the

property when they knew no right existed." SAC ¶¶ 70-71. Accepting the well pled facts as true, Plaintiffs have set forth a viable claim. As stated by this Court earlier, "Plaintiff has set forth sufficient allegations tending to establish that Defendants did not possess the right to collect the amount of debt sought and attempted to collect the debt knowing that they lacked the right to do so." Cole, at *8.

## VI. Plaintiffs' Maryland Consumer Protection Act Claims.

Defendants seek to dismiss Plaintiffs' Maryland Consumer Protection Act ("MCPA") claim against Rushmore and US Bank. The MCPA can be found at Md. Code Ann., Com. Law, §13-101 et seq. (LexisNexis 2013 Repl. Vol.).

Plaintiffs contend that correspondence dated July 15, 2017, April 9, 2018 and April 30, 2018 was sent to Defendants and Defendants provided no response. SAC ¶ 82. Defendants' view is that Plaintiffs state a different position in SAC ¶ 40.

Plaintiffs indicate that there is no semantic trickery, for the SAC ¶ 40 makes clear that as for the July 2017 letter, Rushmore sent a letter of acknowledgement "dated" July 2017, but that Plaintiffs "did not receive . . .[it] near that date. SAC ¶ 40. Accordingly, Plaintiffs believe the letter was not mailed in a timely fashion. Plaintiffs also assert that the letter of acknowledgement was not responsive but merely a promise to respond. Plaintiffs make a similar contention regarding Plaintiffs' letter of April 9, 2018.

As for the April 30, 2018 letter, Defendants do not identify areas in the SAC where Plaintiffs allegedly concede receipt of an appropriate response. Accordingly, this objection is of no moment.

Defendants also argue that assuming Plaintiffs have standing to pursue claims under the MCPA, other concerns unique to the MCPA make their claims subject to dismissal. A proper

assessment of the argument to come requires a brief history lesson. Procedurally speaking, Plaintiffs filed a Complaint (ECF No. 1) which was dismissed without prejudice. Plaintiffs were eventually permitted to file their First Amended Complaint (ECF No. 9) and then a Corrected First Amended Complaint ("CFAC") (ECF No. 10). After Defendants expressed a number of perceived deficiencies in the CFAC, orally and in writing, it was during a telephone conference with the Court that Plaintiffs expressly declined to make further amendments. Instead, Plaintiffs' counsel decided to address any issues after Defendants' motion to dismiss was filed. After Defendants filed their motion to dismiss, Plaintiffs elected not to address the matters directly, but instead sought and received permission to file the SAC, which was filed on January 4, 2019.

On January 18, 2019, Defendants filed the present motion for the purpose of dismissing the SAC. It is here where things get interesting. Defendants' arguments regarding the MCPA claim asserted in the SAC are limited to two pages. Defendants' Motion 7-8. Defendants assert objections to claims related to correspondence from Plaintiffs and Rushmore's responses thereto. Neither in this particular section, nor elsewhere in Defendants' Motion, are more specific concerns raised regarding the MCPA.

Admittedly, Defendants use boilerplate language from the outset of their motion in an attempt to globally incorporate every argument ever raised about the First or Second Amended Complaints.

> Defendants rely upon their previously filed Memorandum of Law in Support of Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment along with all attachments thereto, filed herein at ECF 37. Defendants also rely upon their previously filed Memorandum of Law in Support of Opposition to Motion for Leave to file a Second Amended Complaint, filed herein at ECF 40.

Defendants' Motion 1. A reliance on this technique here is troubling. For most of Defendants' Motion, they take the time to articulate the areas of continuing dispute and to specifically incorporate certain arguments. On these occasions, Defendants make clear that they wish to incorporate arguments made in a previous filing with the Court. This is permissible. The only concern is whether fair notice is given.

By way of example, Defendants provided clear notice when making arguments against the MCDCA claim. "Plaintiff's amendment to his MCDCA claim alleges Defendants violated § 14-202(8) by attempting to collect 'an inflated cure amount.' SAC at ¶ 69. The reasons argued for dismissal of this claim in the First Memorandum also apply to this amendment." Defs.' Suppl. Mem. 7 (ECF No. 49-1). Defendants use the same technique for arguments against the FDCPA claim.

> Plaintiff, however, still fails to plead sufficient facts to make it plausible the NOI's stated cure amount was false for the reasons explained in Defendants' Memorandum of Law in Support of Opposition to Motion for Leave to File a Second Amended Complaint (the "Opposition Memorandum") filed at ECF 40, which has been incorporated herein by reference.

Defs.' Suppl. Mem. 3.

Where this specificity is not provided, it provides neither the Court nor Plaintiffs with clarity regarding Defendants' position. Sadly, Defendants toggle between clarity and obscurity, and when they do so, they do so at their own risk. The Court accepts the incorporations by reference when done with clarity, and similarly rejects the assertion in other instances. One such instance, is where Defendants make arguments against the MCPA claim. Defendants fail to incorporate with clarity or specificity. Therefore, the Court will only address the arguments raised in Defendants' Motion.

On this remaining canvass, Defendants arguments raised in their reply briefing, lose all hope of persuasiveness. Plaintiffs address each of the arguments specifically raised or referred to by Defendants regarding the exchanges of correspondence under the MCPA. The Court will not allow Defendants to lull Plaintiffs into a shadow argument not specifically raised or referred to in Defendants' Motion.

The resulting image, is that Defendants are raising new arguments not previously advanced in the motion to dismiss the SAC. To permit this would deprive Plaintiffs of an opportunity to address the matters under the rules of the Court, as Plaintiffs are limited to their briefing in opposition unless special permission is granted by the Court. The Court will not consider new arguments raised for the first time in Defendants' reply briefing regarding the MCPA. Plaintiffs' MCPA claim survives the motion to dismiss.

**VII.   Plaintiffs' Real Estate Settlement Procedures Act Claim.**

Defendants seek to dismiss Plaintiffs' Real Estate Settlement Procedures Act ("RESPA") claim against Rushmore. RESPA can be found at 12 U.S.C. §2605 et seq. (2014).

Plaintiffs contend the following.

> 95.    Plaintiff's letters dated October 26, 2016, July 15, 2017, April 9, 2018, April 30, 2018 and May 30, 2018, contained Plaintiff's name and account number, was written on a piece of paper that was not from Nationstar or Rushmore, pertained to the loan or the servicing of the loan, and notified Nationstar of an error or requested information from it.

> 96.    Defendants Nationstar and Rushmore violated 12 U.S.C. §2605(e)(1)(A)&(2)(A)-(C) by failing to acknowledge receipt of Plaintiff's written inquiries within 5 days, and failing take appropriate action, including conducting a reasonable investigation of Plaintiff's inquiry and correcting any errors that were reasonably discoverable, and conducting a reasonable investigation and providing

the Plaintiff with her requested information or an
explanation of why the information was not available.

SAC ¶¶ 95-96.  Plaintiffs further state that Rushmore failed to notify Plaintiffs that it acquired

the servicing of the loan within 15 days as required, failed to provide Plaintiffs with the identity

of the true owner of the loan within 10 days of Plaintiffs' request as required, and that Rushmore

failed to respond within 7 days of Plaintiffs' inquiry regarding the payoff balance, improper fees

or charges and foreclosure as required.

Defendants attack these claims by asserting that Plaintiffs fail to plead facts to show that

the referenced correspondence constitute "Qualified Written Requests" ("QWR") under RESPA,

and that Plaintiffs fail to plead facts to show that these letters were not duplicative requests for

information already provided.  Moreover, while somewhat inartfully done, Defendants rely in

part on their motion to dismiss Plaintiffs' First Amended Complaint.[1]  The Court will consider

the earlier motion to dismiss in its discussion of each letter identified.

### A.    Plaintiffs' Letter of October 26, 2016.

Plaintiff states that on October 26, 2016, he wrote "Rushmore a letter that requested a

mortgage payoff statement for September 22, 2013 and November 30, 2016" and that Rushmore

did not respond.  SAC ¶¶ 28-29.  Defendants contend that Rushmore was not required to respond

because: 1) the request did not pertain to the servicing of a mortgage loan; and 2) Rushmore was

not the loan servicer in 2013.  Plaintiffs have provided no further argument regarding these

points.

---

[1]    Defendants specifically refer to their memorandum in support of their earlier filed motion
to dismiss.  "See First Memorandum at ¶6.b."  Defs.' Suppl. Mem. 8.  This was identified as
"Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, or, in the
Alternative, for summary Judgment (the 'First Memorandum'), filed at ECF 37." Defs.' Suppl.
Mem. 2.  Plaintiffs erroneously refer to another document which Defendants do not rely upon
with specificity in this section.

Defendants provide authority for the notion that requesting a payoff is not considered "servicing" under RESPA. <u>Tanasi v. CitiMortgage, Inc.</u>, 257 F. Supp. 3d 232 (D. Conn. 2017) indicates, "[a] payoff statement does not relate to a borrower's periodic payments and is not necessary for routine servicing, but rather for paying the loan in full. Such a request does not relate to 'servicing' under RESPA." <u>Id.</u>, at 264 (citation omitted). Additionally, the SAC suggests that "Rushmore issued correspondence" indicating it had acquired the loan for servicing in June 2016. SAC ¶ 23. There is no indication that Rushmore was the servicer in 2013. These twin reasons, and the absence of argument from Plaintiffs, provide justification for the Court's decision to GRANT Defendants' Motion as to the letter of October 26, 2016.

### B. <u>Plaintiffs' Letter of July 15, 2017.</u>

Plaintiffs allege that in their letter of July 15, 2017 they sought the following: 1) clarification on a disputed interest rate on the mortgage statement; 2) the interest assessed on the loan; 3) the expenses and other items. SAC ¶ 39. In light of these requests, the July 15 letter qualifies as a QWR. Under the RESPA rules, Rushmore was required to provide in writing acknowledgement of the July 15 letter within five business days of receiving it. 12 U.S.C. § 2605(e)(1)(A).

Defendants suggest that they provided a timely response. The SAC indicates that Defendants responded by letter dated July 25, 2017. SAC ¶ 40. Without providing more, Plaintiffs state that the letter was not received "near that date." As Plaintiffs enjoy a viewing of the allegations in a light most favorable to them, the Court accepts Plaintiffs view. Plaintiffs have set forth sufficient allegations to pursue this claim. Accordingly, the Court will not entertain here, the other concerns regarding the July 15, 2017 letter.

### C.     Plaintiffs' Letter of April 9, 2018.

Plaintiffs allege that on April 9, 2018, they wrote to Rushmore regarding its failure to respond to a settlement offer and were now seeking a response within 15 days.  SAC ¶ 45. While Rushmore responded, it allegedly did not provide "a full and complete response."  SAC 47.  Defendants assert that the letter "is not alleged to relate to servicing of the loan."  Defs.' Suppl. Mem. 8.

While Defendants are correct that the April 9 letter does not indicate that it relates to "servicing," that is not the end of the inquiry.  The CFPB is empowered to issue regulations, rules and interpretations in order to give full effect to RESPA.  In doing so, it has issued Regulation X which obligates Rushmore to provide reasonable responses to properly formulated "Requests For Information" ("RFIs").  12 C.F.R. § 1024.36.  The subject areas covered by RFIs is broad, but not unlimited.  Here, the limitation is dispositive.  A settlement demand is not a RFI.  It seeks no information about the account, whether servicing or otherwise.  Plaintiffs' reliance on <u>Colson v. Wilmington Savings Fund Society</u>, Case No. 17-11387, 2018 WL 4658997 (E.D. Mich. Sept. 28, 2018) and <u>Tanasi</u> do not advance the argument.  Plaintiffs have provided no authority to support the notion that a settlement offer equates to a RFI requiring a response under Regulation X.  Defendants Motion as to this correspondence is GRANTED.[2]

### D.     Plaintiffs' Letter of April 30, 2018.

The details of Plaintiffs' letter of April 30, 2018 are set forth in paragraphs 48 and 49 of the SAC.  This letter contained a long list of items that Plaintiffs sought information about, including but not limited to, information about the Legacy Mortgage Asset Trust ("Legacy"), the

---

[2]     Though Plaintiffs failed to allege a similar concern regarding a communication of January 16, 2018, if alleged, such a claim would be met with the same fate of the claim not being actionable.

identities of the owners of the loan, clarification about interest rates applied, and more. Plaintiffs indicate that Defendants did not provide a timely or substantive response. SAC ¶¶ 51, 52.

Rushmore contends that the information requested is duplicative of a request made under correspondence dated July 15, 2017. Rushmore asserts that it fully responded to that request in a timely fashion, and that by doing so, it was not required to respond again.

Plaintiffs argue that "[w]hile it is true that there is some overlap between the letters dated April 30, 2018 and July 15, 2017, the letters are not identical, and the overlapping requests are not duplicative because the requests cover different time periods." Pls.' Opp'n 21. Plaintiffs note that the original request was limited to the period leading up to July 15, 2017, and the latter request covered the period afterward. Plaintiffs also contend that the original letter did not provide a full response for the information sought. Plaintiffs note other differences, including the April 2018 request for information regarding Legacy which was not in the July 2017 request.

The Court is satisfied that Plaintiffs have set forth sufficient facts in the SAC to comply with the Federal Rules of Civil Procedure. RESPA requires a timely and substantive response to these inquiries. As alleged, Rushmore did not, and therefore Defendants' Motion regarding this letter is DENIED.

### E.      Plaintiffs' Letter of May 30, 2018.

Plaintiffs allege they sent a letter to Rushmore on May 30, 2018 seeking information regarding the "identity, address, phone number for the investor and/or owner of Plaintiff's loan." SAC ¶ 51. Plaintiffs state that while they received a response in a letter dated July 17, 2018, said letter "did not provide the phone number for the owner of the loan." SAC ¶ 53.

Defendants contend that the "correspondence was both not related to loan servicing and duplicative of other previous correspondences that requested the identity of the loan's owner." Defendants' Motion 9.

Plaintiffs' Reply by relying upon the language of the statute as summarized in the SAC as Rushmore "failing to provide Plaintiff with the identity of the true owner of the loan within 10 business days. . . ." SAC ¶ 99. Additionally, Plaintiffs note that the original request was limited to the period prior to July 15, 2017, and the May 2018 letter was regarding a different period. Plaintiffs make additional arguments, but none of the comments of Plaintiffs were responded to by Defendants in their Reply brief.

The Court is satisfied that Plaintiffs have set forth sufficient facts in the SAC to comply with the Federal Rules of Civil Procedure. RESPA requires a timely and substantive response to these inquiries. As alleged, Rushmore did not, and therefore Defendants' Motion regarding this letter is DENIED.

**VIII.    Plaintiffs' Truth in Lending Act Claims.**

Defendants seek to dismiss Plaintiffs' Truth in Lending Act ("TILA") claims against Rushmore and US Bank. The TILA can be found at 15 U.S.C. §1601 et seq. (2010).

Plaintiffs contend the following:

111.    Rushmore and US Bank violated TILA, 15 U.S.C. §1641(f)(2) by failing to provide the telephone number for the owner of the loan after Plaintiff made a request for that information.

SAC ¶ 111.

Defendants contend that Plaintiffs cannot allege that they failed to provide the telephone number for the owner of the loan after this request. Defendants state that the April 30, 2018 correspondence did not request a telephone number, but really asked for information regarding

Legacy.  As such, Rushmore claims it was under no obligation to provide information regarding Legacy because Legacy had no ownership interest to the loan.  Defendants' Motion 9-10.

Plaintiffs concede requesting contact information for Legacy, but note that Rushmore identified Legacy as the owner of the loan in the SAC ¶ 46.[3]  Considering the matters properly before the Court, Plaintiffs have sufficiently pled a plausible claim under TILA.[4]

**IX.**    <u>**Conclusion**</u>

For the reasons set forth above, Defendants' Motion is GRANTED IN PART AND DENIED IN PART.


July 2, 2019                                    _____/s/_____
                                                      Charles B. Day
                                                      United States Magistrate Judge

---

[3]      The Court will not consider Defendants' arguments that are based on the motion to dismiss the First Amended Complaint for the reasons expressed earlier.  Once again, Defendants' Motion here does not provide notice to Plaintiffs of their intent to rely on the previously filed motion to dismiss.

[4]      Similarly, Defendants do not seek the dismissal of the Maryland Mortgage Fraud Protection Act ("MMFPA") claim, found at Md. Code Ann., Real Prop §7-401 <u>et seq.</u>